**[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 71.]**

AKRON BAR ASSOCIATION *v*. RITCH.

[Cite as *Akron Bar Assn. v. Ritch*, 2001-Ohio-286.]

*Attorneys at law—Misconduct—Indefinite suspension made retroactive—Converting clients' funds to own use—Issuing checks for which there were insufficient funds to allow payment of those checks—Depositing client funds into an IOLTA but failing to promptly pay or deliver funds to client—Failing to maintain accurate records of client funds—Refusing to turn over legal files to client when requested.*

(No. 00-1139—Submitted October 11, 2000—Decided February 7, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 99-14.

———————————

PFEIFER, J.

{¶ 1} In late 1997, the crisis center at St. Thomas Hospital in Akron, Ohio, assessed attorney Michael E. Ritch of Peninsula, Ohio, Attorney Registration No. 0039222, as a probable cocaine and alcohol addict. Between November 17, 1997 and December 31, 1997, Ritch gave approximately $300 a day to his friend Anthony McIvery to buy crack cocaine for the two of them to smoke. Some of the money came from the accounts of clients that Ritch was representing.

{¶ 2} One of these clients was McIvery, whom Ritch had represented in a real estate transaction. Ritch received a check for $7,912.04 from the closing of McIvery's house, which he deposited into his IOLTA trust account at FirstMerit Bank. He testified to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court (the "board") that he was to receive a legal fee of $750 and that the balance of the check amount was to be delivered to McIvery.

**{¶ 3}** On August 4, 1998, Ritch received a letter from McIvery asking for the proceeds from the transactions. Ritch responded that he had repaid McIvery in full. McIvery testified that Ritch never told him that he was using money from the house closing to buy drugs. McIvery believed that Ritch had allowed him to use a portion of the drugs because he had the connections to obtain them.

**{¶ 4}** On June 2, 2000, the panel found Ritch to have violated several Disciplinary Rules for converting clients' funds to his own use, issuing checks for which there were insufficient funds to allow payment of those checks, and having his accounts closed by the FirstMerit Bank. These actions violated DR 1-102(A)(1) (a lawyer shall not violate a Disciplinary Rule), DR 1-102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude), DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 1-102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on the lawyer's fitness to practice law).

**{¶ 5}** The panel also found that Ritch had violated Disciplinary Rules by depositing client funds into an IOLTA but failing to promptly pay or deliver the funds to his client, and by failing to maintain accurate records of the funds. These actions violated DR 9-102(B)(3) (a lawyer shall maintain complete records of all funds of a client coming into the possession of the lawyer) and DR 9-102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by a client any funds in the possession of the lawyer which the client is entitled to receive).

**{¶ 6}** The panel further found that Ritch had refused to turn over legal files to a client when requested. This action violated DR 2-110(A)(2) (a lawyer shall not withdraw from employment until he has taken reasonable steps to void foreseeable prejudice to the rights of his client). The board adopted the findings, conclusions, and recommendation of the panel.

**{¶ 7}** Ritch has attempted to cleanse himself of drugs and alcohol. He reported his conduct to the Akron Bar Association in October 1998, was treated for

his addiction by undertaking an intensive, six-month outpatient therapy, and remains an active participant in the Ohio Lawyers Assistance Program and in Alcoholics Anonymous. He requests that this court impose a definite suspension of up to twenty-four months. The board recommends an indefinite suspension retroactive to December 4, 1998, the date he attained sobriety.

{¶ 8} We adopt the findings, conclusions, and recommendation of the board. Respondent is hereby indefinitely suspended from the practice of law in the state of Ohio. The suspension is retroactive to September 3, 1999, the date on which respondent's attorney registration status as an attorney in Ohio changed to inactive. Costs taxed to respondent.

*Judgment accordingly.*

Moyer, C.J., Douglas, Resnick, F.E. Sweeney, Pfeifer and Lundberg Stratton, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 9} I agree that an indefinite suspension is the appropriate sanction in this case. But I respectfully disagree with the decision to make that suspension retroactive to some prior date.

_____

*Michael L. Robinson*, for relator.

*Michael Drain*, for respondent.

_____